# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| Donald Lankford, | : | Case No. 3:20-mc-00001 |
| Plaintiff, | : | District Judge Douglas R. Cole |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| Wells Fargo Home Mortgage and their agents, et al., | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATIONS[1]

Donald K. Lankford, a resident of Dayton, Ohio, previously defended against a civil foreclosure case brought in state court concerning his former residence in Trotwood Ohio. *See Wells Fargo Bank N.A. v Donald K. Lankford*, 18 CV 00610 (Montgomery Cnty, Ohio C.C.P.). The public record of that case establishes that Lankford was unsuccessful in his defense.[2] On September 11, 2019, the state court issued an Order confirming the Sheriff's sale of the Trotwood property.

On January 14, 2020, Lankford engaged in a post-judgment effort in state court to regain an ownership interest in, and possession of, the Trotwood property. He did this by filing in state court a document captioned, Notice: LAMP Arbitration Notice of Stay for Arbitration and LAMPS [sic] Order for Interim Relief, an Entry LAMP Arbitration

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

[2] Taking judicial notice of public-court records is warranted. *See* Fed. R. Evid. 201(b)-(c); *see also Wyser-Pratte Management Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005).

Interim Relief, and a Motion/Notice.  He then crossed the street (figuratively, if not literally) to federal court by instituting this miscellaneous case with a Motion to Enforce Arbitration Award and a Motion to Issue an Emergency Injunctive Stay to Reestablish Possession of Property and Memorandum in Support.  (Doc. #1).

Although this case should have been originally docketed as a civil case, docketing it as a miscellaneous case has worked in Lankford's favor because he has avoided paying the filing fee applicable to civil cases, and he has not submitted an application to proceed *in forma pauperis*.  But rather than require Lankford to re-file this as a civil case, present consideration is warranted because of the federalism concern he presents—specifically, the respect this Court must give the state court judgment at issue under the Full Faith and Credit Act, 28 U.S.C. § 1738.  Additionally, a present look at Lankford's submissions is appropriate in the interests of justice and judicial economy, and given the Court's inherent authority to control its own docket.  *See Link v. Wabash R.R.*, 370 U.S. 626, 630-31 (1962).

"[U]nder 28 U.S.C. § 1738, this Court is required to afford a decision of a state court full faith and credit.  To do so, a court determines the preclusive effect of a decision under state law and applies it accordingly." *Hake v. Simpson*, 3:17cv420, 2018 WL 3973098, at *5 (S.D. Ohio 2018) (Rose, DJ) (citing *Corzin v. Fordu*, 201 F.3d 693, 703 (6th Cir. 1999), citing *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 384, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985)).

Ohio's claim-preclusion law, res judicata, has four elements:

(1) a prior final, valid decision on the merits by a court of competent

2

> jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.

*Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 520 (6th Cir. 2011) (citation omitted). Each element is realized in the present case: The Montgomery Court of Common Pleas decided the merits against Lankford in the prior state foreclosure action, leading to the Sheriff's sale of the Trotwood property. The present case involves the same parties and the same claims, or claims that Lankford could have, litigated in the state foreclosure action. And the present case arises out of the same foreclosure action previously litigated in state court. With each element satisfied, res judicata, and consequently, the Full Faith and Credit Act preclude the present case. *See Hake*, 2018 WL 3973098 at *5-*6.

Lankford may argue that there was no decision in state court on the merits of his Motion to Enforce Arbitration Award. This argument, however, does not enable him to avoid the res-judicata effect of the merits decisions in the state-court foreclosure case, let alone the resulting Sheriff's sale of the Trotwood property. At least two reasons justify this. First, Lankford does not indicate in this case that any circumstance prevented him from seeking arbitration in state court before the final decision on the merits. Second, and more significantly, the purported LAMP Interim Arbitration Award Lankford seeks to enforce in this Court, and in state court, is invalid.

Lankford has filed a copy of the LAMP Arbitration Interim Award. This document states, "There is a matter in dispute and an application to LAMP Arbitration

3

for an alternative dispute resolution, brought forth by Claimant Donald K. Lankford. A written agreement to arbitration is on the record of the related matter and all parties were notified of the arbitration hearing." (Doc. #1, *PageID* #9). These statements alone are insufficient to establish that Lankford and Wells Fargo N.A. entered into a valid arbitration agreement. Lankford has not provided the Court with a copy of any, let alone a valid, arbitration agreement. Without a supporting and valid arbitration agreement, the LAMP Arbitration Interim Award lacks the force of law. *Cf. Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 450 (6th Cir. 2005) ("Before this Court can send a case to arbitration, we must first determine whether a valid agreement to arbitrate exists." (citation omitted)).

Although the above problems are fatal to Lankford's present case, there is another concerning matter created by the copy of the LAMP Arbitration Interim Award he submits. The arbitration award carries the signature of ":terra: Gwarek" and identifies three arbitrators: ":Terra: Gwarek," ":Mary: Dressler," and ":Pete-Wilson: Jones." (Doc. #1, *PageID* #11). There is no information in the record about the qualifications of these individuals to act as arbitrators. There is, moreover, scant information about what LAMP is except for what appears to be a seal containing several phrases—"'De oppresso liber,'"[3] "LAMP Common Law Arbitration," and "United States Unincorporated." *Id.* Neither the arbitration award nor any of Lankford's materials explain what each letter of the acronym LAMP stands for. Another document he submits—titled, "LAMP ALL-PROOF OF SERVICE," *id.* at 5—oddly lists as Co-Respondents, "William P. Barr;

---

[3] Spanish for "liberate the oppressed." *See Curran v. Amazon.com, Inc.*, 2:07-0354, 2008 WL 472433, at *1 (S.D. W.Va. 2008).

4

ACTING [sic] ATTORNEY GENERAL," and "Sonny Purdue; ACTING SECRETARY [sic] … United States Department of Agriculture." *Id.* at #6 (capitalization in the original). These and other aspects of the LAMP Interim Arbitration Award attach to it a stigma of illegitimacy. The interim arbitration proceeding occurred by phone without the participation of Wells Fargo or its counsel of record in the state-foreclosure case. Further, the purported LAMP Interim Arbitration Award aligns with the types of chicanery offered by so-called sovereign citizens—"persons who through name changes and pseudo-legal documents consider and declare themselves to be free from obligations such as federal income taxes, state registration requirements, and private contracts." *El Bey v. Bank of America, N.A.*, 2014 WL 517491, at *6 (E.D. Mich. 2014) (citation omitted). This is further illustrated by the above idiosyncrasies; the references in the seal to LAMP Common Law Arbitration (an unexplained, if not phony, entity); and the phrase, "United States Unincorporated People," a pseudo-legalism that expresses the opinion characteristic of sovereign citizens that the U.S. Government lacks legal authority. If, in the end, chimera has led to the LAMP Interim Arbitration Award—as it appears—Lankford's present case is frivolous. *See Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *cf. Ashcroft v. Iqbal*, 556 U.S. 662, 696,129 S.Ct. 1937, 1959 (2009) (Souter, J., dissenting) (courts need not accept as true "allegations that are sufficiently fantastic to deny reality as we know it: claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel.").

   **IT IS THEREFORE RECOMMENDED THAT**:

   1.   Lankford's Motion to Enforce Arbitration Award and Motion to Issue an

5

       Emergency Injunctive Stay to Reestablish Possession of Property (Doc. #1) be DENIED; and

2.     The case be terminated on the Court's docket.

May 6, 2020                                     *s/Sharon L./ Ovington*
                                                              Sharon L. Ovington
                                                              United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).